3-13-0106, people who stayed on the line, accoladed by Timothy Kelly v. Brandon Haygood, counseled by Matthew Mueller. Mr. Mueller. Thank you. May it please the court, counsel. My name is Matthew Mueller. I represent Brandon Haygood. I also represented Brandon Haygood at the trial in regards to this matter. Mr. Haygood is requesting that this court reverse the trial court's ruling in convicting him for class A misdemeanor of obstructing a peace officer. The basis for why we believe this should be overturned or reversed is, there are four. The first would be that current case law dictates that under these sets of circumstances, no offense was committed. The second would be that the officer was not authorized under these circumstances to demand that Mr. Haygood get back into his vehicle. Third, that the demand that Mr. Haygood get back into his vehicle was in violation of Mr. Haygood's Fourth Amendment rights. And finally, that the state failed to prove beyond a reasonable doubt that Mr. Haygood had the requisite mental intent to commit the crime of obstructing a peace officer. Briefly, nearly all of the facts of this case are captured on the video, which is the dash cam on the officer's vehicle. On September 14, 2012, the officer allegedly heard that Mr. Haygood had a loud muffler. The officer turned around and sped up in an attempt to try to catch up with Mr. Haygood. By the time the officer, the deputy, caught up with Mr. Haygood, Mr. Haygood's vehicle was lawfully parked in a private driveway. The vehicle was locked. Mr. Haygood was outside of the vehicle and walking towards the front of the residence of the place where the vehicle had been parked. The deputy said, come back here. Mr. Haygood complied. The deputy then said, give me your license. Mr. Haygood complied. The deputy asked a question about the address. Was the deputy engaged in an authorized act when he said, come here? I believe that he is engaged in an authorized act. He certainly has the right to be able to talk to him. What I will discuss later would be whether or not that authorized act allows him to then put him into a vehicle that he was in. Well, those are the facts of the case, but let's start with, is there a seizure at that point? Is there an arrest at that point? What is it? How do you characterize that? I think it's in that gray area when there's a traffic stop of whether or not the defendant's arrested or whether or not the defendant is merely seized. Given these circumstances, I think that- What's the difference between a seizure and arrest? Well, I think Miranda is largely the difference between a seizure, would be the difference between a seizure and arrest. If he's seized or if he's detained for the purposes of dealing with a traffic stop, Miranda is not necessarily necessary. And if he is arrested, then Miranda would be necessary. However, either way, under these sets of circumstances, the officer tells the defendant to go back to your car. And Mr. Haygood actually did go back to his car. Once Mr. Haygood went back to his car, he- It was a truck, wasn't it? It was. I'm sorry. It's a truck. He drops the tailgate of the truck, and he sits on the tailgate. The officer then says, get back inside your vehicle. And Mr. Haygood's response is, it's locked. Would you call it obstruction if he did not go back to his truck? I think that what's relevant here would be the Berardi and Leadington cases. Berardi being a third district case that I believe two of the panel here actually heard. And Leadington, which is an Illinois Supreme Court case. So the question would be, based on the totality of the circumstances, was there obstruction? And I think that Berardi stands for the idea that if the defendant merely argues with the police, verbal arguments, and then complies with the police's request, then there would be no obstruction. So to answer your question, I believe that if he had refused to go back to sit on his tailgate, but then had complied- If he refused to go back to his vehicle. But then complied when the officer said, you were under arrest, put his hands behind his back, allowed him to be arrested. Then under those circumstances, we have a factual scenario very, very close to Berardi. And that given all of that, there would not have been an appropriate conviction for obstructing. Now the state argues in its brief that what we're looking at here is a situation in which, after Mr. Haygood refused to go back into his vehicle after he said it was locked and that he wasn't going back into his vehicle, the crime of obstructing has already occurred. I believe that that argument does fail, simply because of the fact that Berardi and Leadington both would have committed the offense of obstructing at the point in which they originally told the officer, no, I'm not doing that. I believe that Berardi and Leadington stand for a different proposition, which is you look at the totality of the circumstances, everything that's going on here. And what you have in this specific case, from when the deputy first told Mr. Haygood, go inside your vehicle, to when the deputy arrested Mr. Haygood, you have approximately 18 to 19 seconds of argument by Mr. Haygood between him and the deputy. And after that, the deputy says, turn around. Mr. Haygood turns around without being asked, puts his hands behind his back, allows the officer to handcuff him. Given those circumstances, as soon as those 18 to 19 seconds were gone, as soon as he agreed to be arrested, any problem that the officer would have, any situation that arose, was completely dispelled by Mr. Haygood's agreement to put his hands behind his back. Now, I will point out that the officer in this case clearly could have put Mr. Haygood in handcuffs without charging him with obstructing a peace officer. He could have said, this is a dangerous situation. I'm, for officer's safety, I'm putting you in handcuffs. So he had an option that did not mean that he had to charge Mr. Haygood with the crime of obstructing a peace officer, a crime that he did not commit. In fact, that would have been the more appropriate action to take. In addition, Mr. Haygood challenges the officer's ability to be able to even order him to go back into the vehicle under the circumstances in which the seizure or the interaction begins when Mr. Haygood is outside of the vehicle. Now, I believe that this is largely an issue of first impression. There have been cases on similar points, but none where the defendant's on private property outside of his vehicle. And what we have here is merely an officer who has the subjective belief that this is a traffic stop. And as the result, he can order Mr. Haygood to go back into his vehicle. Why do you think he wanted him back in the truck? Well, I think he wanted him, my belief would be that he wanted him back in the truck so he could search the truck. And that's where the Fourth Amendment argument really takes control here. Didn't your client just make an election whether he wanted to challenge the officer and face a misdemeanor or possibly comply with the order and then be fighting a search and seizure later? Or possibly, was there ever a search? I think the video does reflect that there was a search incident to the toe. Was there anything found? There were no charges and there was nothing found. So what we have here... Your client kind of made an election of where he wanted to stand his ground. And I'm struggling with that. Sure, and I agree. I think it is relevant that this same officer had searched my client's same truck previously. And my client deemed that to be illegal, unconstitutional. And that my client had not consented to that search. So he's taking that into consideration. But I think to get at the issue that I think you're concerned about, I believe City of Champaign v. Torres and People v. Hilgenberg talk about this issue. They discuss the fact that the officer can't order an individual to do something that the officer himself could not do. In other words, and I believe it's Hilgenberg, I want you to open that door. Well, the officer didn't have the authority. He didn't have a warrant. He didn't have probable cause with exigent circumstances to open the door himself. So a defendant or a suspect can't be charged with obstructing based on not following an order that would be by itself unconstitutional. So you're saying his directive for the defendant to go into his car is a violation of the Fourth Amendment. I am. And the reason being that this is a locked vehicle. It's a locked vehicle. The incident, the encounter that's going on is away from the vehicle. It's actually in the back of the vehicle. The officer has no reason, based on what's going on there, to even be around the vehicle, to even be near the vehicle. He doesn't? What kind of stop is this? Well, it's a loud muffler stop. He doesn't have the right to go and inspect the vehicle to see if there's a muffler there? Well, he may have the right to look on it. He can go up to the car. You just said he couldn't go around the vehicle. Well, I don't believe that he could go through the main body of the vehicle. And I believe that when you have a situation in which he's requesting that the defendant open a locked door, enter that locked door, then we have a situation in which the officer has de facto freedom. Does the officer know it's locked? Yes. Mr. Haygood says it's locked. That's his very first response to Deputy Wojak's request that he go back into the vehicle. And we're currently living in a world where it's probable cause to just smell marijuana. The officer can just claim that he smelled marijuana, and then that's probable cause to be able to search the vehicle. Taking that into consideration, the very opening of the door gives the officer access that he otherwise would not have had. And in addition, I believe that the city of Champaign and Torres and Hilgenberg direct this court to look at whether the officer himself could do what he is trying to accomplish. Could the officer himself go and open the door to that vehicle? And the answer to that would clearly be no. So under those circumstances, the officers... You're not saying that as a blanket rule, the officer can't open the door to the vehicle. No, I'm saying that under the circumstances in which the defendant is outside of the vehicle at the time the stop happened, the vehicle is locked and nobody is in the vehicle, that the defendant does not have... pardon me, that the deputy does not have the ability to be able to go and open that locked door. Clearly, that would be... If there's a gun on the seat and he sees it, like here? Well, then there might be an exception, pursuant to a plain view exception. I don't know why he would have... He'd be looking in the windows under those circumstances, but we don't have any plain view... Every officer's face through the windows at the stop. Well, I guess that's just training. And I guess that's... And that's actually one of the reasons that it is a Fourth Amendment violation to have Mr. Haygood be sitting in that vehicle, because it changes the location of where the interaction actually is. It's similar to putting him inside of the house. He can't say, go inside the house so that I can then look inside the house to see if there's... For whatever reason, or I mean the soundness of the reasoning, wasn't there testimony by the officer as to why he wanted him to return to the cab of the truck? There was testimony there. The officer did not indicate on the video that... No, no, no. But there was testimony at the trial that he deemed it was necessary for officer safety. And whether or not it was necessary for officer safety, I don't believe that that makes any difference when you're talking about a Fourth Amendment violation. Just because the officer has additional safety concerns does not necessarily mean that he gets the ability to go through any locked container, gets to go through the entire vehicle. I believe that that's clearly... We usually hear the officer safety argument being made in the opposite situation when they ask the driver or passenger to step out so they can pan them down. Right, I mean there is an aspect of this case where the officer is actually trying to remove the defendant from directly in front of his view and put him in a vehicle that by Mr. Hagut's testimony actually had dangerous weapons in it. The other aspect too is that the state hasn't proven Mr. Hagut guilty beyond reasonable doubt. Pursuant to People v. Jones, this is a specific intent crime. And as a specific intent crime, the state had to establish that Mr. Hagut actually had the intent to obstruct the officer. And what we have here is a situation in which Mr. Hagut is trying to stay on the camera because pursuant to his testimony he had been beaten up before and he wanted everything to be captured. And the same officer had previously illegally searched his vehicle before. What's important here is that the officer, the deputy, did not take the time to try to explain to the defendant, Mr. Hagut, why he wanted him back in the vehicle. He's being pulled over for a non-moving violation. Mr. Hagut would have no reason to know exactly why he's being pulled over. And the deputy didn't take the time to say, this is why I want you to do that. If he had, maybe then you could impute knowledge of intending to obstruct. But based purely on this, there's no evidence that the defendant intended to obstruct anything or that he even knew that he was obstructing anything. For those reasons, we believe that this panel should overturn the defendant's conviction for obstructing a peace officer. Thank you. Can I ask you a quick question? Why not challenge the basis of the stop? The officer didn't see the truck, he just heard it? Or maybe I have the facts wrong. I believe that the testimony was that the officer heard and saw the truck. He did lose track of it, but then he eventually ended up getting behind it. I do think that there's case law that says you can't resist or obstruct even an unlawful stop. I was thinking that he didn't see the truck simultaneously with hearing the noise. I may have my facts wrong. Okay, you've answered my question. Okay, thank you. Was the muffler bad? I don't believe it's reflected in the record, but my client's position would be no, the muffler was not bad, that this was harassment or merely an attempt to search the vehicle once again unlawfully. Interesting. Could he direct your client to get into the car and start it? I don't believe that he could. I believe that he could not simply because of the fact that there's a Fourth Amendment issue. It is a locked vehicle, and I believe People v. Estrada has already talked about this and established that you have a Fourth Amendment privacy interest in your locked vehicle, in your locked vehicle that you've moved away from. So that argument, I believe, would be in violation of his Fourth Amendment. So it's the locked vehicle. It is the locked vehicle. I think the main component isn't that it's the locked vehicle. It's that he's moved away from the closed-off vehicle. Locked certainly adds a component to it, but the fact that when the stop happens, he is moved away from that vehicle, he's no longer within that vehicle, limits, for Fourth Amendment purposes, the officer's ability to be able to interact with the interior of that vehicle. Yeah, but he's not in the interior. He says get in and start the car. Right, but he is increasing his ability to be able to access the interior of the vehicle by being able to interact with the defendant while he is sitting inside of the locked vehicle. Thank you. Thank you. May it please the Court, Counsel. The officer is executing a traffic stop. The defendant did. The officer asked him for his license. The defendant gave him his license. The officer asked him to get in the car. The defendant walked around to the back of the truck. The officer asked him again to get into his vehicle. The defendant said it was locked, sat down on the tailgate of the truck. The officer said, I'd like you to get into the vehicle. Otherwise, I'm going to arrest you. And the defendant got up, closed the tailgate, came over, and submitted to the arrest. The officer never said, I want to get into your vehicle. The officer never said, I want to escort you to your vehicle. The officer never touched him, took him over to his vehicle to open the door. The people submit that the, as this Court recently said in Smith, the elements of obstructing a peace officer were proved. The defendant knowingly obstructed a police officer in the execution of a lawful act. The officer was executing a traffic stop, told the defendant he was executing a traffic stop, had obtained his license for the purpose of executing a traffic stop. The officer testified at the hearing that for office of safety, he likes to have the defendant remain in the car. In this case, since he had already exited the car, he asked him to re-enter the car. He explained why. He explained in detail why he wanted the defendant to be in the car rather than sitting on the tailgate of the car. And it was a legitimate reason for office of safety, which the trial judge accepted. And the, of course, the issue of a Fourth Amendment violation never came up below because there was no Fourth Amendment violation. The officer was trying to write a ticket. It is his practice and his training for office of safety to have the defendant remain in the vehicle. That way, he can see if the defendant is leaving or, in any event, opens the door. In this case, he said that it would be more difficult to observe with the defendant sitting on a tailgate. He could wander away from the scene more easily. The officer had a reason for asking the defendant to get in the car, and the defendant refused to comply with that request. Rather than Variety, the people rely on People v. Smith, which was in their brief, the case where the- I'm sorry, I couldn't hear you. You're speaking so fast and softly. It's hard for me to hear you. The people relied on People v. Smith, which is a case that this court decided in February, where a traffic stop was executed again in the driveway or in front of the private home. The defendant was asked to remain in the car. The defendant remained in the car, but before the officer completed the ticket, the defendant got out of the car with his groceries to go into the house, and he contended on appeal, since he was found guilty of obstructing justice, that he had no intent to obstruct. He just wanted to put his groceries in the freezer, and this court found that all the elements of obstructing a peace officer had improved. The officer was in the executing an authorized act, and the knowing conduct of the defendant had impeded that act. That's what happened here. The officer was executing a traffic stop, asked the defendant to reenter his car, and the defendant refused to do so. The elements of obstructing a peace officer were proved. The trial judge was correct in finding him guilty, and the conviction should be affirmed. The defendant has the right to be free from unreasonable searches and seizures. That's the Fourth Amendment. There is no indication on the record that the officer asked him to return to his car so that the officer himself could enter the car. This is unlike the cases cited by defendant. The car is not entitled to a heightened level of privacy that a home is entitled to. Those cases are not analogous to what the officer asked the defendant to do here. He merely asked the defendant to reenter the door and obviously to close the door of his car, keeping the officer out. When an officer directs the driver to get in the car or to whatever, considerably any direction, is that a seizure at that point? It's a detention. What's the difference? It's just a word. It's two different words, but what is really the difference? It's a detention or a seizure under Terry v. Ohio. The defendant is not free to leave at that time. It is a detention. It is not an arrest. It did not ripen into an arrest. So it is a seizure or a detention. How do you define an arrest? Because you say that I'm struggling with these kinds. It's such a murky area. Yes, it is. There was never a detention. He was arrested at this point. No, I'm talking generically, okay? Well, an arrest occurs when an officer has probable cause to believe a crime has been committed. At that point, the person is taken. But to determine when a detention or a seizure occurs, whose mind do we look at? The mind of the person being detained or the mind of the officer? I don't know that it is a subjective test. I think it's an objective test. And what's the objective test? Whether there's probable cause to believe that the person has committed an offense. Do you mean if the defendant feels certain? Where do we get this language when the person feels that they're not able to leave? That would apply in this case as well. This is a detention for the limited purpose of the traffic stop. He is not free to leave the scene. So I don't think that's a relevant, certainly not relevant question to this case. And I'm not sure of the context in which you're asking it. Because the defendant will always testify he wasn't free to leave. Can I ask you a question based on a point that you raised? And that is the Fourth Amendment wasn't discussed in the trial court. And I want to preface my question. I don't think you wrote the state's... Oh, I'm sorry. I meant to preface my argument. Nadia Chaudry, who wrote the brief in this case, has taken a leave of absence from our office to pursue an internship with the U.S. Attorney's Office in Sacramento for a year. So you might not know the facts quite as well as Mr. Mueller knows them, because he was there in the trial court. But was the issue raised in the trial court with respect to whether there was sufficient evidence to show obstructing based on this Fourth Amendment? No. I believe that the argument below was based on variety. That the defendant was merely arguing with the police officer and had not committed obstructing a peace officer. I believe the argument below was based on the variety decision by this court. So Ms. Chaudry didn't argue for... There was an issue raised in the brief, and she briefly responded to it, but certainly not in the level of detail that Mr. Mueller has gone into it today. What do you think about the Fourth Amendment issues, the illegal seizure issue? Because my question to him was, why not just do a motion to suppress? The request was illegal at that point. I don't know. Okay, and you didn't write the brief? No, I did not write the brief. Okay, thank you. Any other questions? Yeah, we're back to this question of we're always talking about when would a reasonable person believe they're not free to leave, right? Okay. Okay. I mean, isn't that kind of just a general mantra we throw in opinions? Yes. And in what context do we throw that in? In the detention, seizure, and arrest? In the traffic stop context, it often comes at the conclusion of the traffic stop, because he is detained for the duration of the traffic stop, and as long as the duration is not unduly prolonged, then that's a reasonable detention. When the traffic stop is completed, the defendant is told he is free to leave, or even if he is not told, he is free to leave. When his driver's license and ticket are returned to him, he is then free to leave. Okay, so let's talk about a seizure is a detention. We think they're one and the same? Yes. Okay. So we're talking about, though, a different action than just detaining, aren't we? Now we're talking about an action of directive by the officer? In this case, to return to the car, yes. I believe an officer can make directives during a temporary seizure, yes. Okay. And so we look at the unreasonableness of the directive, right? If we're doing a Fourth Amendment analysis. I mean, could the directive, in other words, you can have a lawful seizure or detention, but you can have an unlawful directive that would make it an unreasonable seizure. Maybe I'm parsing it too fine. Perhaps, perhaps. I don't think that that was the contention here. I think the, well, I don't think it was the contention below at all, and I don't think it's substantiated here, because I don't think the defendant has the same rights with regard to an automobile as he has to a seizure. What are the limits on a directive of an officer in a traffic stop? What are the limits? Yeah. That's too broad a question, Judge. I'm not prepared to answer that today. It's a case-by-case basis. Okay. Does there have to be a nexus in the directive between the authorized act and the directive? Presumably. Yes, I would say. In this case, the officer explained why he had asked him to return to his car. Thank you. You did a nice job of having not read or written the brief. Thank you. Mr. Mueller? Thank you. Can you touch on my question about why you didn't raise this Fourth Amendment issue in the context of a motion to suppress? Sure, I think I can. There is case law that says that you can't resist or obstruct even an unlawful arrest or stop. And so did you argue that in the trial court? Did I argue that there – I'm sorry, I don't understand your question. Did you argue – I'm jumping ahead, I'm thinking ahead. Did you argue in the trial court that the officer's directive to get back in the truck was an unlawful request? Yes, and I think you'll see that the judge actually ruled on that issue. I believe that it was raised, it was argued, and I believe all of the issues that were argued here today were actually argued at the trial court by me. The state just talked about People v. Smith. I really think it's important to point out the differences between People v. Smith and what's happening here and what happened in Variety and what happened in Weddington. What happened in People v. Smith was the defendant got out of his vehicle, was told several times to get back into his vehicle. The defendant actually, in People v. Smith, indicated he was leaving the scene. He was going inside of his house. And then the big difference is the officer actually had to fight with the defendant in order to place him under arrest. And that's the big distinction between Variety and Weddington, which is you have just an argument and then compliance. People v. Smith is a very different set of facts because you don't have merely an argument followed by complete compliance. And as a result, that's an appropriate obstructing charge. The difference here is Mr. Haygood argued with the police but then complied completely. Did he ever comply with the request to get back in his truck? No, but I would argue that neither did Variety. Variety was instructed to leave the area. I think the facts of Variety make it clear that the officer said, you're going to be arrested, you're going to be taken downstairs if you don't obey. And Variety's response was, well, then you're going to have to arrest me. And the officer's response, okay, you're going downstairs. So Variety was also complying with being arrested, and that's what alleviated the obstructing charge. Because what we have here is 18 to 19 seconds of disputing whether an officer who had already searched Mr. Haygood's car, who was pulling Mr. Haygood over for a loud muffler, whether he had to get back inside of the car when the officer requested it to. And I think it's really, really striking what Mr. Haygood says. What was the authorized act in Variety that the officer was attempting to complete? If I remember correctly, it was clearing a restricted area of City Hall. What's the authorized act that this officer was attempting to complete? The authorized act here would be issuing a warning, I guess, for a loud muffler or issuing a citation for a loud muffler. I think the distinction between the two fails in a way, though, because... But there is a distinction. A slight. The fact of the matter is, in Variety, he really didn't have a right to be at the location that he was claiming that he did. Mr. Haygood clearly had a right to be at the location that he... But we're talking about the authorized act of the officer now. Correct. That's what you're trying to distinguish. Well, I think that I don't... I would not tell you what Variety meant, because I believe you sat on the panel for Variety. But Variety's ruling was that argument coupled with eventual compliance is not obstructing. And I would suggest that the facts of this case... Well, that's a broad extrapolation, because you have to look at the authorized act that you're interfering with. And an obstruction, don't you? I think you do. However, I would say that the ruling in Variety stands for every type of act, which is, if I merely say, I don't agree, I don't agree, I don't agree, fine, do what you want. Regardless of what the authorized act is, you still have a situation in which the defendant's conduct has alleviated any ability to be able to charge obstructing because of his complete compliance. Thank you. Thank you. Thank you very much. Thank you. We will be taking the matter under advisement, and we'll be in a brief recess now for panel change.